OF THE STATE OF ARKANSAS. 71

TERM, 1856.]                    Fenter et al vs. Obaugh et al.

## FENTER ET AL. VS. OBAUGH ET AL.

A sheriff, having in his hands a writ, issued in a chancery cause, commanding him to take into his possession certain property, then in the possession of the defendant in chancery, and to keep the same until the final decree, unless the defendant should enter into bond, with sufficient security to abide the decree, &c., upon application to F. who was illiterate, and could neither read nor write, to become security in such bond, assured him that it was a *delivery bond*, and that his obligation, upon it, would cease upon delivery of the property at the then next succeeding term of the court; upon which assurance, F. executed the bond, protesting that he would not execute a bond for any other purpose:

HELD, 1st: That the facts set up inducing the execution of the bond, if the representations, as to its character, had been made by the obligees, were a good defence under a special plea of *non est factum.*

2. That the plaintiffs in the chancery cause, the obligees in the bond, were as much bound by the representations made by the sheriff to the obligor, as to the character of the bond, as if made by themselves.

3. That the bond, when returned and filed in the chancery cause, was not a record, in such sense as would estop the obligor from denying the obligation for fraud in its execution.

## Appeal from Hot Spring Circuit Court.

## Hon. JOHN C. MURRAY, Circuit Judge.

ENGLISH, for the appellant. No principle is better settled by authority, than that where the signature of an unlettered man is obtained to a bond, by misreading, or misrepresentation as to its true character he may avoid it, by plea of fraud, or special *non est factum.* If a man, that is illiterate, desire a bond read, that he is to seal, and it is not done, and he seal it, it is not a good deed. So, if the party to whom the deed is given, or a *stranger* shall read, or declare the contents of the deed falsely,

or otherwise than the truth is, the deed will be void.   1 *Shep.*
*Touch., p.* 53, 54, 55, 56, 60 ; *Hallenbeck & wife vs. Dewitt,* 2
*John. Rep.* 404; *Jackson ex dem., Tracy vs. Hagner,* 12 *John.
Rep.* 469 ; *Dorr vs. Munsell,* 13 *John. Rep.* 430; *Van Valken-
burgh vs. Rouk,* 12 *John. Rep.* 337 ; *Story's Plead.* 205, *Title*
COVENANT.

WATKINS & GALLAGHER, for the appellees.   The gravamen of
the plea is, that the defendant, being an illiterate person, was
misinformed, by the sheriff, as to the purport or nature of the
bond.   No doubt a deed may be avoided if misread to an illiter-
ate person, by the party who is to be benefitted by it, or any agent
of his, or by a stranger, whose acts are considered as adopted and
ratified by the acceptance of a deed obtained under such circum-
stances.   All the authorities cited imply that the deed is pur-
posely or fraudulently misread, so as to be executed under im-
position.   Here the sheriff did not read the bond at all, being
unable, as he said, to do so, but undertook to state the purport
of it, with which Fenter was satisfied, and he must now bear the
consequences of his own ignorance, and that of the sheriff, upon
whom he relied.

The bond in suit was taken in the course of a judicial proceed-
ing, and was necessarily made a part of the officer's return to
the writ, which issued to him, against Pond; and, therefore, can-
not be collaterally impeached, or questioned upon any such al-
legation as that set up in the plea.   Surely it will only be neces-
sary, on this point, to refer to the decision of this court in *New-
ton vs. The State Bank,* 14 *Ark.* 1, and the authorities cited in
the briefs of counsel in that case.

Mr. Justice HANLY delivered the opinion of the Court.

This was an action of debt, brought by the appellees against
the appellants, and one Rippetoe, as sureties, for William Pond,
in the Hot Spring Circuit Court, on the following bond :

"Know all men by these presents, that we, William Pond, as

principal, Samuel Floyd, Andy Fenter, and P. B. Rippetoe, as securities, are held and firmly bound unto James B. Obaugh, and Matilda E., his wife, William Pond, jr., Willis Pond, Augustus B. Pond, and Mary Ann Pond, in the sum of one thousand dollars, &c., &c. Signed and sealed, this 25th day of August, 1856.

Conditioned, that whereas, the Hon. John J. Clendennin, Judge of the Circuit Court of Hot Spring county, sitting as Chancellor, in and for said county, in vacation, on the 2d day of July, A. D. 1846, on hearing the bill of complaint about to be filed in said court in chancery, by James Obaugh, and Matilda E., his wife, William Pond, jr., Willis Pond, Augustus B. Pond, and Mary Ann Pond, complainants, against William Pond, senior, and William F. S. Barkman, made an order on said bill, that upon said complainants entering into bond in the sum of one thousand dollars, to said William Pond, senior, with sufficient security, to be thereafter approved, conditioned that they would prosecute their said bill with effect, and would pay whatever damages the said William Pond, senior, might show to have sustained, if said bill should be adjudged and decreed in his favor, the clerk of said Circuit Court, of Hot Spring county, should issue a writ to the sheriff of said county, commanding him to take into his possession and custody, certain negro slaves, to wit: *Mariah*, a woman, aged about 33 years; *Sopha*, a girl, aged about 5 years; *Dennis*, a boy, aged about 4 years, and an infant child, about 8 months old, child of said negro woman *Mariah*, (all then in the possession of the said William Pond), and hold the same, subject to the further order of said court, or the chancellor thereof, unless said defendant, William Pond, should enter into bond to the said complainants, in the sum of one thousand dollars, with sufficient security, to be approved by said sheriff, conditioned that he would abide the decree that might be rendered in said case, and surrender said slaves, in case a surrender thereof should be required ; and, whereas, said writ was issued in pursuance of said order, and the said sheriff is prosecuting to execution the same ; and, whereas, said William Pond desires to retain possession of said negroes until
6c

74            OF THE STATE OF ARKANSAS.

Fenter et al. vs. Obaugh et al.            [JANUARY

the determination of said cause; now if said William Pond, senior, *shall abide the decree that may be made in said case*, and surrender the said negro slaves above described, in case a surrender thereof shall be adjudged, then the above obligation to be void; else to be and remain in full force and effect."

The declaration set out the bond, and assigned as special breach of the condition thereof, that on the 29th August, 1851, a final decree was rendered in said chancery cause; that the right and title to said slaves should pass to, and vest in, the complainants; that William Pond, senior, should be perpetually enjoined from asserting any claim thereto, and forthwith surrender to complainants the possession of said slaves, which he had failed to do, or otherwise *abide* the decree. The value of the slaves is stated, and general breach of non-payment of the bond, &c.

Defendant *Pond* was not served with process, and *Rippetoe* made default.

*Fenter* and *Floyd* craved oyer of the bond and its condition, which was granted by filing· a copy.

*Fenter* filed four pleas : 1st. A special plea of *non est factum;* in substance, that on the 25th August, 1846, the date of the supposed bond, and ever before and since, he was illiterate, uneducated and wholly unable to read or write; that after Fullerton, the sheriff, had taken possession of said slaves, by virtue of the writ of injunction mentioned in the declaration, *to wit :* on the 25th August, 1846, he, as such sheriff, and said William Pond, senior, called on defendant, whilst he was at labor in the wood, and then and there solicited him to sign a paper, which they called a bond for the delivery of said slave at the then approaching term of the Hot Spring Circuit Court, to be holden at Rockport, on the second Monday of September, then immediately following; that defendant declared, positively, that he would not sign a bond for any other purpose, than for the delivery of said slaves to said sheriff, at said term of said court, which was but a few days off, and that if the bond would bind him for any longer time, or any other purpose, he would not sign it. That the said Fullerton and the

said Pond, both assured him that the bond was for no other purpose than to secure the delivery of said slaves to the sheriff at said term of said court; that if said defendant would sign it, he would then be relieved from all obligations thereon, on delivery of the negroes as aforesaid; that defendant asked the said sheriff, Fullerton, to read to him said bond and its condition, but said Fullerton, after attempting so to do, said he could not read the handwriting in which it was written, but again positively assured the defendant, that it was for the delivery of said negroes to him at the court aforesaid, and for no other or different purpose; that thereupon, said defendant permitted his name to be signed to said bond, and made his mark thereto; that afterwards, on the second Monday of September, 1846, said defendant obtained possession of said slaves, and took them to said town of Rockport, and delivered them to the said Fullerton, as such sheriff, in accordance with what he, defendant, understood and believed to be his undertaking in said bond; that the said sheriff received into his custody and possession said slaves, and during that day defendant was informed, for the first time, that the bond, which he had so executed as aforesaid, was not a delivery bond, as had been represented to him, but was conditioned, as its tenor shows, and so the defendant says, that the said supposed bond in the said declaration, is not his act and deed—concluding with a verification. Plea sworn to.

It is deemed unnecessary to set out the other pleas of Fenter, or to notice the proceedings had upon them.

*Floyd* filed a special plea of *non est factum*, the same, in substance and effect, as Fenter's first one.

The plaintiffs took issue to Fenter's first plea; also, to the one interposed by Floyd.

A jury was sworn to try the issues between the plaintiffs and defendants, *Fenter* and *Floyd*, upon their respective pleas of *non est factum*, and also to enquire into the truth of the breach assigned in the declaration, and assess the damages sustained by the plaintiff's by reason thereof, &c.

The jury returned a verdict in favor of Fenter and Floyd upon the issues, and found the breaches true, and assessed the damages at $1.500, as against *Rippetoe,* defendant, who was in default.

The plaintiffs then filed a motion for judgment *non obstante verdicto,* against *Fenter* and *Floyd,* on the grounds that their pleas of *non est factum* were not sufficient, in law, to sustain the verdict rendered in their behalf.

The court sustained their motion, and rendered judgment against *Fenter* and *Floyd,* as well as *Rippetoe,* for $1000, the penalty of the bond.

It does not appear from the transcript, that after the rendition of the judgment, *non obstante,* against *Fenter* and *Floyd,* any other proceedings were had in the court below, in the way of calling in a jury to find the breaches assigned and the assessment of damages thereunder ; but the judgment was made final at once.

The defendants *Fenter* and *Floyd* excepted, and appealed to this court.

Three several causes are assigned by the appellants, why the judgment of the Hot Spring Circuit Court should be reversed, and under them, in consequence of the position assumed by the appellees, the broad ground is presented to this court, whether or not the appellants can controvert, in an action brought upon the character of bond which we have stated, the fact of the execution of the instrument, either by a *general or special plea of non est factum ;* maintaining, as they do, that the appellants are estopped from denying their deed ; because, by the return of the sheriff, made in conformity with the fiat of the chancellor, it has become a part of the records of the chancery cause, to which it relates and applies, relying upon the well established principle, that a record cannot be collaterally questioned by either the parties thereto, or their privies.

In determining the point involved in the above proposition, we will do so in reference to the defence set up in the first plea of the appellants, which we will denominate, as it evidently is a special plea of *non est factum* of the instrument sued on.

And in considering the subject, we shall sub-divide the proposition into the following heads of enquiry:

1. Is the matter set up in the plea a good bar, supposing the representations charged to have been made by the sheriff of Hot Spring county, were charged to have been made by the appellees, and leaving out of the question the assumption, that the bond, after return, is a record?

2. Admitting that if the representations stated in the plea had been made by the appellees, the defence would have been good and available to the appellants; does not the fact that they were made by the sheriff of Hot Spring county, whilst executing process, alter their effect or render them unavailable to appellant?

3. And if the representations being made by the sheriff do not alter their effect as to the appellants, can they be set up as a defence, after the bond is returned and becomes a record?

We shall consider these several questions in the order in which they are respectively presented, conceiving, as we do, that their solution must determine this cause, one way or the other, without reference to the other errors assigned. The only effect of pleading *non est factum* specially, instead of *generally*, is, that in the former case the burden of the issue is on the party pleading it. See 2 *Greenl. Ev.*, *sec.* 300, *p.* 303, and the case of *Brown vs. Wright*, determined at the present term of this court, and the authorities there cited. Besides this, there are many defences which could only be rendered available by pleading in this form. See *same reference; also* 1 *Chitty's Pl.*, *p.* 483, *texet and note A.* Such, for instance, as the defence set up in the plea under consideration; which, we therefore, hold to be in due form, and appropriately pleaded, if the substance thereof is available as a bar; which we will proceed to determine under the heads above proposed.

*As to the first head:* It is said that if a man, that is illiterate, desire a bond read to him, that he is to seal, and it is not done, and he seal it, it is not a good deed. See 1 *Sheppard's Touchstone, p.* 53, 54, 55, 56, 60; 2 *Tucker's Com.* 414. And this is so, for

the reason, that the act thus performed, wants that essential quality which is necessary to exist in all contracts, to make them effective and operative: *i. e.*, the *assent of the parties* : for, says Mr. PARSONS, in his invaluable work on contracts : " There is no contract unless the parties thereto assent, and they must assent to the same *thing*, in the same sense.   A mere assent does not suffice to constitute a contract, for there may be an assent in a matter of opinion, or in some fact which is done and completed at the time ; and, therefore, leaves no obligation behind it.   See 1 *Parsons on Con.* 399.   And we apprehend that this assent must as well exist in reference to the *substance* of the contract itself, as to its *subject matter*, as maintained by the author whom we have just quoted.   But we are not left to speculation as the only means of solving this branch of our problem ; for it hath become an established principle of the law, that "if the party, to whom the deed is to be given, or a *stranger*, shall read or declare the contents of the deed, *falsely or otherwise than the truth is*, the deed will be void."   See *our references to* 1 *Sheppard's Touchstone, as above* ; also, *Hallenbek and wife vs. Dewitt*, 2 *J. R.* 404 ; *Jackson, ex dem.*, *Tracy vs. Hayner*, 12 *J. R.* 369; *Van Valkenburgh vs. Rouk*, 12 *J. R.* 337; *Daw vs. Munsell*, 13 *J. R.* 430, cited by the appellant's counsel; and, also, see 2 *Tucker's Comments* 415; 1 *Fondb. Eq.* 115.

In *Van Valkenburgh vs. Rouk*, SPENCER Judge, said : "If a deed be misread or misexpounded to an unlettered man, this may be shown on *non est factum* ; because he has never assented to the contract.   So, if a man be imposed upon, and signs one paper while he believes he is signing another, he cannot be said to have assented to it."   We will not pursue this branch of our subject farther, remarking, in passing, in justice to the counsel for the appellees, that the position is conceded in their argument. We hold, therefore, that the matter set up in the plea is a good bar, conceding the representations, therein charged to have been made by the sheriff of Hot Spring county, were charged to have

been made by the appellees, leaving out of question the assumption that the bond, after return, is a record.

*Secondly.* In the execution of process, such as the sheriff of Hot Spring county had in his hands at the time it is averred he made the representations to the appellants, touching the bond, though acting in the capacity of a public officer or functionary, he sustained towards the appellees, to some extent, the relation of agent or servant, resulting as well from the particular phraseology of the fiat of the judge or chancellor, as from the special act, which he was required to do thereunder, with the scope of his general duties, and for the reason, as expressed by WALKER, J., in a case not without analogy to this, in which he said, (speaking of an execution, the return of which was attempted to be controverted by the defendant therein, which he held could not be done for the reason among others,) "It is executed for their (defendants') benefit by the officer of the law." See *Newton vs. The State Bank,* 14 *Ark.* 13.

Beside this, from the official position of the sheriff, at the time the representations were made by him, it was fair for the appellants to presume, that he was not only cognizant of the particular duties, which he had to perform, but likewise of the character and import of all documents legitimately resulting from the performance of those duties ; thereby rendering him the proper person to be applied to for such information as the appellants demanded, before they would execute the bond in question. His relation, in this view, was official, and *quasi fiduciary*, in respect to both parties to the chancery suit. He was the person whose duty it was made, ordinarily, in such cases, to prepare the bond or have it done ; and, consequently, to know its contents and purport, even though he might not be able to read the hand in which it was written. He was the person whose duty it was, as he really did, on the occasion referred to, to take the bond, it is true, not payable to himself, but the appellees. The appellants, it seems, were unlettered. This fact must have been known to the sheriff, for the plea avers that they asked him to read them the bond; and, also, when

they were told he could not do so, on account of the illegibility of the writing, they replied they would sign the instrument, but would only do so on the assurance that the negroes could be delivered thereunder, at the next term of the court, which was then near at hand, in pursuance of its condition. The assurance of the sheriff was then the inducement, which influenced the appellants to seal the deed. This assurance may have been made in good faith on the part of the sheriff, which we have no reason to doubt or question, from the face of the plea ; but it was untrue and unauthorized, and if an injury must result from it, on whom must and should it fall? Certainly not on the unfortunate, unlettered appellants, but upon the party who, though perhaps, innocently, yet unadvisedly, occasioned the injury. The consequences must rest upon the sheriff, at the suit of the appellees, for we conceive there can be no fault laid to the appellants from the facts set up in the plea. It is true, the appellees had no part in the false representation which induced the appellants to make the deed. *They,* therefore, are equally innocent, and stand as favorable before the court ; but the maxim of the law, in such cases, is, "that where the rights of the parties are equal, the condition of the defendant is best." But independent of the foregoing considerations, the authorities we have already given, in treating of a previous branch of the subject, particularly the extract which we gave from 1 *Sheppard's Touchstone,* in which the following passage occurs, "if the party to whom the deed is given, or *a stranger,* shall read or declare the contents of the deed falsely or otherwise than the truth is, the deed will be void," (which we find fully sustained by the adjudicated cases, which we have referred to, in the same connection,) render it clear to our minds, that though the plea charges the false representations which induced the appellants to make the deed in question, to have been made by the sheriff of Hot Spring county ; yet, that does as effectually bar the appellees, under all the attendant facts, as if the representations had been made by themselves, and so averred in the pleadings.

*Thirdly.* It is insisted by the counsel for the appellees, con-

ceding, by way of argument, the above points, as we have determined them, that in consequence of the bond in question having relation to the chancery suit, to which it applied, and being returned by the sheriff, and filed in that cause by the clerk, it became, *ipso facto*, a record, and as a consequence thereof, that no defence can be heard whereby to *impeach* or *question* it in any way, and the case of *Newton vs. The State Bank*, 14 *Ark. Rep.*, *page* 1, is cited in support of the latter part of the proposition. By reference to that case, it will be perceived, the adjudication was made on the following facts: The action was ejectment, brought by the plaintiff against the defendant for two lots. Plaintiff claimed title to them as purchaser at execution sale, and at the trial, produced the record showing judgment against defendant, an execution duly returned, showing a regular levy on the lots, their advertisement and sale according to law; and, also, the deed of the sheriff duly executed, acknowledged and recorded. The defendant then offered to prove, by parol, that the sale to the plaintiff was made without notice, and on a different day, and on one subsequent to that stated in the sheriff's return. This court, in that case, held, that "the acts of an officer done in obedience to the law, when required to be certified and returned, form a part of the records of the case in which they are had, and being part of the records, the return, as well as the execution and the judgment, imports absolute verity, and is alike conclusive, as the judgment, upon the rights of the parties to the record.

It will be perceived from the language of this court, in the extract which we have given, that the judgment of the court was predicated upon the fact, that the defendant in that case, was the defendant in the case under which the sale had been made to Newton; or, in other words, that he was the *"party to the record"* in that case. In the case that we are considering, the appellants were not parties to the record in the chancery cause, except so far as they may have collaterally been made so, by making the bond in question. The fact of their being connected with the cause in this way, would not conclude them upon the record, in

reference to the subject matter of the suit. A decree in that cause, one way or another, could not affect them, except to afford evidence, *in pais*, to enable the appellees to establish their breaches. But the court say, in passing upon the deed, in the case of *Newton vs. The State Bank*, "our conviction is, that the deed is conclusive and cannot be impeached on a collateral issue, except for fraud in the execution of the deed, when the process, under which the land was sold, is supported by an existing, unsatisfied judgment."

There is a marked and evident difference between the case referred to by the counsel, as above, and the one being considered, in this ; 1st. In the present case, the proceeding is a *direct one* upon the bond ; and *secondly :* Because fraud is charged in the plea to avoid the record. We understand the difference between a *direct* and *collateral* proceeding, in the acceptation of this court in the above case, to be this. A direct proceeding upon a record is, where the record is itself the *foundation*, or *cause* of action, and the proceeding designed to impeach it is for fraud, &c. A collateral proceeding upon a record is, where the action is *for* or *on* something else, but where the record *may*, or *does* incidentally arise, or come in question. In the former case, according to the case of *Newton vs. The State Bank*, the record may be impeached ; for the proceeding is for that purpose. In the latter case, it cannot except for *fraud*, on the universal principal, that where fraud exists in any of the varied transactions of men, the party, who may be affected by it, may be relieved in one or other of the forums ordained and established for the adjudication of rights between man and man. In the case at bar, the appellants have virtually charged, in their plea, *fraud* against the appellees, by which they hope to avoid the deed : for we hold that the facts averred are substantially to this effect. That we are sustained in the above views, we refer again to the case of *Newton vs. The State Bank*, and the reasoning urged by WALKER, Judge, in delivering the opinion of the court in that case, in which he says, after holding parol evidence inadmissible to contradict a sheriff's deed : "The door for re-investigation is closed

upon the parties to the record. It is not to be questioned by them; this, because they are parties to the record, and have had day in court, and it is not only their interest, but their duty to look to the regularity of the proceedings, and when passed without objection, they may be said, in effect, to have received the approval of the parties," &c. If, *now*, the doors of the court having ample jurisdiction to determine their cause, are to be closed against appellants having had no day in court in the chancery cause, verily they would be in a most deplorable and lamentable condition; for, if they cannot be relieved under the state of facts set out in the plea, by making the same case by bill in equity, they could not expect to share a better fate, and thus they would have no remedy against a bond, which is not their deed, whether by *direct* or *collateral* proceeding thereon. But we will not further reason on the subject, holding as we do, that, independent of what we have said, it has virtually been put at rest by former adjudications of this court. See *Ruddell vs. Magruder*, 6 *Eng. Rep.* 583, 584 ; *Reardon ex parte*, 4 *Eng. Rep.* 453 ; *Dugan ad. vs. Fowler*, 14 *Ark. Rep.* 136, in which latter case, the suit was directly founded upon a delivery bond, and in which the court say : "When suit is brought upon the bond, it may be defended against just as when brought upon any other instrument, upon which there has been a recovery had." By which, as we understand it, the court laid down the law to be, that, in consequence of a delivery bond, after forfeiture having the force and effect of, and being in fact an office judgment, no defence could be interposed which could reach behind the date of the judgment. Hence, its execution or consideration could not be questioned after breach; for the reason, that the bond, by operation of the statute, is transformed into, or is merged in the judgment, which becomes, thenceforward, the evidence of what the bond before imported. For defects, relating to the execution or consideration of the bond, after breach the party could have no other relief than a resort to a court of equity. See as to this, *Reardon ex parte* and *Ruddell vs. Magruder*, as above.

Wherefore, holding as we have done, that the first plea of the appellants set up a good defence to the appellees' action upon the bond in question, it is clearly our opinion that the Circuit Court of Hot Spring county erred in disregarding the finding and verdict of the jury, upon the issue to that plea, and rendering judgment, *non obstante*, for the appellees, the law being in such case, that judgment, *non obstante verdicto*, can only be given where the plea of the defendant confesses the action, and does not sufficiently avoid it; in which case judgment shall be given for the plaintiff, on the confession, without regard to the verdict, in favor of the defendant.    See 2 *Tidd's Practice, p.* 920; *Dickinson vs. Morrison*, 1 *Eng. Rep.* 266, 267.

For the above error, let the judgment of the Hot Spring Circuit Court be, and the same is hereby reversed ; and let it be certified to said Circuit Court, that it is hereby directed and required to render judgment upon the verdict of the jury returned in this cause for the appellants at the trial.

Mr. Chief Justice ENGLISH did not sit in this case.