Willie May JONES *v.* UNION MOTOR COMPANY, INC.

CA 89-240                                                          779 S.W.2d 537

Court of Appeals of Arkansas
Division I
Opinion delivered November 8, 1989
[Rehearing denied December 6, 1989.]

*Patrick Parsons*, Legal Services of Arkansas, for appellant.

JAMES R. COOPER, Judge. Willie Mae Jones appeals from a judgment for the appellee, Union Motor Company, Inc., for the deficiency remaining after the repossession and sale of an automobile. The appellant contends that the sale was commercially unreasonable because the appellee failed to comply with the requirements of the Uniform Commercial Code. We affirm.

On May 29, 1985, the appellant purchased a 1980 Toyota automobile from the appellee and financed $2,767.00 of the purchase price. The appellee took a security interest in the automobile and later assigned the contract to General Motors Acceptance Corporation (hereinafter "GMAC") with recourse. The appellant defaulted in her payments, and on October 24, 1986, the automobile was repossessed and taken to the appellee's lot. On that date, GMAC sent the following notice to the appellant:

Since you have not made your payments, we have taken your vehicle. It is to be held at *Union Motor Co., Hwy 81 S., Monticello, AR*. It must be held at least until 9:00 a.m. *Nov. 3, 1986*. It may be sold at any time after that. (A sale includes a lease.)

To get your vehicle back you must pay all past due payments, plus expenses. Then you must start your monthly payments again. You can get your vehicle back any time until it is sold. As of the date of this letter you must pay:

| | |
|---|---|
| Past Due Payments (2 of $130.89 and one of $_____) | $261.78 |
| Late Charges | $ 60.53 |
| Expenses | $ 30.00 ESTIMATED |
| Total | $352.01 |

*The longer you wait, the more you may have to pay to get your vehicle back.* Only reasonable expenses may be charged. They must be the direct result of retaking, storing, and selling the vehicle. We can also charge you the costs of getting it ready for sale and reasonable lawyers' fees.

*If the vehicle is sold*, the unpaid balance, expenses, and other liens will be deducted from the sale price. If any money is left, it must be sent to you within 45 days. If you do not get the money, you may have the right to sue for it plus any penalties fixed by law.

If the sale price is less than the total amount you owe, *you still owe the rest.*

. . . .

Contact us to get your vehicle back. If you have any questions, let us know.

On November 25, 1986, pursuant to the terms of the assignment, the appellee repurchased the contract from GMAC.

The automobile remained for sale on the appellee's lot for

approximately four months. In February 1987, it was sold for $275.00, and the appellee then brought suit for the deficiency of $1,347.92. The appellant defended the action on the ground that the sale was commercially unreasonable, and she filed a counter-claim against the appellee for damages resulting from the appellee's failure to provide adequate notice of the sale.

At trial, Jan Coomer, an employee of GMAC, testified the notice was mailed to the appellant on October 24, 1986, by GMAC on its behalf and that the appellee repurchased the contract from GMAC on November 25, 1986. The repossession report was introduced through her testimony. It reveals that, at the time of repossession, the interior and upholstery of the automobile showed excessive wear; that the finish was scratched; that the windshield was broken; that the right front fender was damaged; and that the automobile's mileage was 94,048.

Wayne Dye, Union Motor Company's acting general man-ager during the relevant time frame, testified that the automobile was in bad condition for resale when it was repossessed and that the brakes were repaired for sale. Dye testified that the automo-bile was placed on the appellee's lot for sale to the general public after November 3, 1986, and remained there for a period of four months. He testified that appellee had several automobile whole-salers look at the automobile in order to ascertain its value and that $275.00 was all he could get for it.

Willie Mae Jones testified that the automobile was damaged and had been driven over 78,000 miles when she purchased it. She also testified that the automobile looked almost the same when it was repossessed as when she bought it.

On November 10, 1988, the circuit court awarded judgment to the appellee in the amount of $1,347.92, plus costs, attorney's fees, and interest. The court made the following findings:

> 2. That there was only one notice sent to the Defend-ant in this case, which was a notice dated October 24, 1986, and which was sent to the Defendant by General Motors Acceptance Corporation; that the said notice received by the Defendant was reasonable notification of the sale conducted by the Plaintiff, Union Motor Company, Incor-porated, as required by Arkansas law.

3. That the content and wording of the aforesaid notice was adequate and sufficient and provided the Defendant with the information and notice as required by Arkansas law.

4. That the sale of the Defendant's repossessed vehicle as conducted by the Plaintiff was a private sale and that it was conducted in a commercially reasonable manner.

On appeal, the appellant argues four points: (1) that the trial court erred in finding that the appellee was not required to send an additional notice of sale to the appellant; (2) that the trial court erred in finding that the notice was sufficient under the requirements of the Uniform Commercial Code; (3) that the trial court erred in finding that the sale was conducted in a commercially reasonable manner; and (4) that the trial court erred in not awarding judgment to the appellant on her counterclaim.

For her first point on appeal, the appellant argues that Ark. Code Ann. Section 4-9-504(3) (1987) requires that the secured party which ultimately disposes of the repossessed collateral is required to send the required notice. The appellant argues that, because the appellee repurchased the contract from GMAC after GMAC sent notice to the appellant but prior to the sale of the collateral, the appellee should have sent additional notice to the appellant. The appellant, however, concedes that the Arkansas Supreme Court's holding in *Brown* v. *Ford*, 280 Ark. 261, 658 S.W.2d 355 (1983), contradicts this position but urges this Court to overrule that decision.

Arkansas Code Annotated Section 4-9-504(3) provides in pertinent part:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

*See also Anglin* v. *Chrysler Credit Corp,* 27 Ark. App. 173, 175, 768 S.W.2d 44, 45 (1989).

In *First State Bank of Morrilton* v. *Hallett*, 291 Ark. 37, 41-42, 722 S.W.2d 555, 556-57 (1987), the Supreme Court ruled that, when a creditor repossesses collateral and sells it without sending proper notice to the debtor as required by the Uniform Commercial Code, the creditor is not entitled to a deficiency judgment. "When the code provisions have delineated the guidelines and procedures governing statutorily created liability, then those requirements must be consistently adhered to when that liability is determined." *First Nat'l Bank of Wynne* v. *Hess*, 23 Ark. App. 129, 134, 743 S.W.2d 825, 827 (1988) (quoting *First State Bank of Morrilton*, 291 Ark. at 41, 722 S.W.2d at 557). "If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." *First State Bank of Morrilton*, 291 Ark. at 41, 722 S.W.2d at 557, quoting *Atlas Thrift Co.* v. *Horan*, 27 Cal. App. 3d 999, 104 Cal. Rptr. 315, 321 (1972).

In *Brown, supra*, an automobile was sold by Lakeshore Motor Company after the contract was repurchased by Lakeshore from Ford Motor Credit Company. The automobile was repossessed by Ford Credit on July 2, 1980, the Ford Credit mailed notice to the debtor that the car was on Lakeshore's lot, that it would be sold at private sale any time after ten days from the date of notice, and that Brown would be liable for any deficiency. On September 2, Lakeshore repurchased the contract from Ford Credit and ultimately sold the automobile sixteen months later, after encountering difficulty in obtaining a purchaser. A deficiency judgment was entered against Brown, who argued on appeal that the sale was not commercially reasonable because Lakeshore failed to sell the collateral within a commercially reasonable time. The Supreme Court disagreed. Brown also argued that the notice given by Ford Credit was insufficient for a sale which was held by Lakeshore sixteen months later. The Court stated:

> Brown next argues that the notice given by Ford Credit was insufficient for a sale held by Lakeshore 16 months later. We do not agree. The secured party has only a duty to give reasonable notice of the time after which any private sale will be made. A second notice is not required even though a significant period of time passes before resale. See Ark. Stat. Ann. Section 85-9-504(3) (Supp.

1983).

Brown also argues the notice was misleading in that it stated Lakeshore was to sell the car, but the car could be redeemed prior to sale from Ford Credit Company. We find no merit to this argument. Ford Credit was an assignee of the contract and was a secured party along with Lakeshore. Brown admits to receiving notice from Ford Credit. The fact that Brown went by and discussed with the dealer the possibility of getting the car back proves that the notice was sufficient to prevent her from being misled. This further shows that the notice was given in time to allow the appellant to exercise her right of redemption.

280 Ark. at 264, 658 S.W.2d at 356-57.

In the case at bar, the appellee did not repurchase the contract from GMAC until a few weeks after November 3, 1986, the date after which the automobile was placed for sale. Further, the notice clearly indicates that the automobile was located at the appellee's address, where it was ultimately sold. We find no material distinctions between the facts of the case at bar and those in *Brown*, and therefore, we find no merit in the appellant's first point.

Secondly, the appellant argues that the notice sent by GMAC was insufficient because it did not specifically state that the sale would be public or private or that the repossessed collateral would *actually* be sold. Section 4-9-504(3) does not specifically require that the words "public" or "private" be used in the notice. In their treatise, *Uniform Commercial Code*, James White and Robert Summers note that:

> For a private sale of collateral that is neither perishable nor threatens to decline speedily in value, nor is customarily sold on a recognized market, the creditor must inform the debtor of "the time after which any private sale or other intended disposition is to be made * * *." For such public sales, 9-504 requires different information: "the time and place of any public sale * * *."
>
> The contents of a notice for a private sale, then, are sufficient if the notice says: "The collateral will be sold at a private sale on or after (a particular date)". Courts have,

however, given effect to a notice that in substance says: "The collateral will be sold in a private sale ten days or more after the sending of this notice." Both forms of notice give the debtor a minimum time in which to arrange alternate financing so to redeem, or to find a substitute buyer, or to solicit bids. Moreover, both alert the debtor to the date on which he should be concerned to oversee or inquire about any proposed sales.

Despite the straightforward Code language, a few courts insist that the secured creditor provide still further information. For example, one court requires creditors to state explicitly in their notices whether the sale is to be public or private. We see no reason for such a requirement, assuming the contents of the notice are otherwise clearly worded, given that harsh consequences may flow from secured party's failure to send proper notice, and the text of 9-504 adopts a minimalist approach.

J. White & R. Summers, *Uniform Commercial Code* Section 27-12, at 600-01 (3d ed. 1988).

The distinction between private sale and public sale was recognized by the Arkansas Supreme Court in *Barker* v. *Horn*, 245 Ark. 315, 316, 432 S.W.2d 21, 22 (1968), where the Court stated that, although the statute requires notice of the time and place of public sale, only reasonable notification of the time after which a private sale will be made is required. In the treatise, *Uniform Commercial Code*, the authors state that:

Before the creditor can sell or otherwise dispose of the collateral, 9-504(3) requires the creditor to send notice to the debtor.

The purpose of notice is to give the debtor an opportunity either to discharge the debt and redeem the collateral, to produce another purchaser or to see that the sale is conducted in a commercially reasonable manner. [*Buran Equip. Co.* v. *H & C Investment Co.*, 142 Cal. App. 3d 338, 190 Cal. Rptr. 878, 881 (1983).]

Cases involving notice issues should be resolved with these three purposes in mind.

J. White & R. Summers, *Uniform Commercial Code* Section 27-12, at 598-99 (3d ed. 1988). *Accord Bank of Dover v. Shipley*, 299 Ark. 451, 773 S.W.2d 825 (1989). Here, the automobile in question was not disposed of at public sale, and the circuit court specifically found that it was sold at private sale. It was not necessary that the notice expressly use the term "private sale."

We also disagree with the appellant's argument that the notice is ambiguous. Although it stated that the automobile "may be sold at any time" after November 3, 1986, the clear intent of the notice, taken as a whole, is that attempts would be made to sell the automobile after November 3, 1986. Clearly, the notice sufficiently informed the appellant so that she could adequately protect her interest in the automobile. We hold that this was adequate compliance with Section 4-9-504(3).

For the appellant's third point, she argues that the sale was not commercially reasonable because the automobile, after having been purchased by the appellant for over $3,400.00, was sold less than two years later for only $275.00. Whether a sale of collateral was conducted in a commercially reasonable manner is essentially a factual question. *Farmers and Merchants Bank v. Barnes*, 17 Ark. App. 139, 142, 705 S.W.2d 450, 452 (1986); *Henry v. Trickey*, 9 Ark. App. 47, 49, 653 S.W.2d 138, 139 (1983). The findings of fact of a circuit court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence, and in making that determination, this court gives due regard to the superior opportunity of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Bass v. Serv. Supply Co.*, 25 Ark. App. 273, 276, 757 S.W.2d 189, 190 (1988); Ark. R. Civ. P. 52(a).

Further, the fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. *Thrower v. Union-Lincoln Mercury, Inc.*, 282 Ark. 585, 590, 670 S.W.2d 430, 433 (1984); Ark. Code Ann. Section 4-9-507(2) (1987). "Any difference between the fair market value and the price actually received, however, is ordinarily a material consideration, but this fact must be examined in light of all aspects of the sale to determine commercial reasonableness." *Id.*

*Accord Farmers Equip. Co.* v. *Miller*, 252 Ark. 1092, 1097, 482 S.W.2d 805, 809-10 (1972); *Womack* v. *First State Bank of Calico Rock*, 21 Ark. App. 33, 39, 728 S.W.2d 194, 197 (1987).

At the time of its repossession, the automobile had over 94,000 miles on it. Although the testimony was in conflict about the condition of the automobile at the time of its sale and its repossession, this was an issue for the circuit judge to resolve. Additionally, the automobile was available for sale to the general public on the appellee's lot, and wholesalers were invited to view it. In light of the evidence, we cannot say that the circuit judge's finding that the sale was commercially reasonable is clearly against a preponderance of the evidence.

Because we find no merit to the appellant's first three points on appeal, we also find no error in the circuit judge's denial of the appellant's counterclaim.

Affirmed.

JENNINGS and MAYFIELD, JJ., agree.