## Cecil GOODIN v. FARMERS TRACTOR & EQUIPMENT COMPANY

5-5301                                     458 S. W. 2d 419

Opinion delivered September 28, 1970

[Rehearing denied November 2, 1970.]

*John F. Gibson, Jr.*, for appellant.

*Bridges, Young, Matthews & Davis;* By: *William R. Holland,* for appellee.

GEORGE ROSE SMITH, Justice. The defendant-appellant, Cecil Goodin, purchased from the plaintiff-appellee, Farmers Tractor & Equipment Company, a combination of dirt-moving equipment that we will call simply a tractor. The transaction was a credit sale upon monthly payments. When Goodin fell behind in his payments Farmers repossessed the tractor and sold it at public sale, Farmers itself being the only bidder. Farmers then brought this action under the Uniform Commercial Code to recover an asserted deficiency of $3,313.75. Ark. Stat. Ann. § 85-9-504(2) (Add. 1961). Goodin defended primarily on the ground that his signature to the contract had been obtained by fraud. At the conclusion of a jury trial the presiding judge directed a verdict for Farmers in the full amount sued for. Goodin makes three separate arguments for reversal.

First, Goodin contends that the trial court misinterpreted the parol evidence rule in excluding parts of Goodin's testimony having to do with the manner in which he was defrauded. In fact, as will appear when we reach the appellant's third point for reversal, most of his assertions of fraud were admitted without objection and appear in the record. If other evidence was actually

excluded, there was no offer to show what the testimony would have been, and consequently we cannot say that prejudicial error occurred. *City of Prescott* v. *Williamson*, 108 Ark. 500, 158 S. W. 770 (1913).

Secondly, the proof shows that Farmers, after repossessing the tractor, sold it to itself at public sale for $250 and credited that amount upon Goodin's indebtedness. Goodin now insists that Farmer's bid was so inadequate as to violate that provision of the Commercial Code which requires that "every aspect of the disposition [of the collateral] including the method, manner, time, place and terms must be commercially reasonable." § 85-9-504(3). The pivotal question is whether Goodin sustained his burden of creating an issue for the jury as to whether the seller's procedure was "commercially reasonable."

We agree with the trial court's conclusion that Goodin failed to raise an issue of fact for the jury. The plaintiff Farmers, in presenting its case in chief, offered testimony to prove that the condition of the tractor, when repossessed, was "very poor—close to scrap." One witness said that "the engine was torn apart, and there were several boxes of pieces. It had rained in the engine, and we didn't find all the pieces when we repossessed it."

Farmers not only gave notice of the proposed sale by six separate newspaper publications but also notified Goodin and a preceding purchaser, Jim Stratton, by personal letters. Yet no bidder except Farmers appeared at the sale, which was kept open for three hours. W. D. Jones, the president of Farmers, testified that the bid of $250 was reasonable, that he would have sold the tractor to anyone else at that price before it was overhauled at a cost of about $2,000, and that at the time of the trial his company had been trying unsuccessfully for some four months to sell the tractor at an asking price of $5,000.

Goodin, to establish his defense, offered only the

testimony of William D. Hale. Hale testified that, on some date which he could not approximate, he offered a Farmers salesman $3,700 for the tractor, having heard that there was that much against the machine. The salesman refused the offer, saying that Farmers also had a $2,000 shop bill on the tractor and wanted $5,000 for the machine. Hale in turn refused the counteroffer.

Upon the question at issue the Commercial Code is explicit: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party *is not of itself* [our italics] sufficient to establish that the sale was not made in a commercially reasonable manner." Ark. Stat. Ann. § 85-9-507(2). Yet that precise proof—that a better price could have been obtained by a sale at a different time and in a different method— comprised the only substantial evidence adduced by Goodin upon the point at issue. What little case authority there is upon this provision of the Code indicates that decidedly stronger proof is needed to establish commercial unreasonableness. See, for example, *Mercantile Financial Corp.* v. *Miller,* 292 F. Supp. 797 (E. D. Pa. 1968); *A. J. Armstrong Co.* v. *Janburt Embroidery Corp.,* 97 N. J. Super. 246, 234 A. 2d 737 (1967) and *J. F. England's Sons* v. *Liggett,* 82 S. D. 656, 152 N. W. 2d 583 (1967). In view of the precise language of the Code we are unable to say that the appellant's meager proof made the necessary prima facie showing that Farmers's public sale was not commercially reasonable.

Thirdly, Goodin insists that he adduced substantial evidence of fraud on the part of Farmers in the inducement of the contract. Hence, argues Goodin, the trial court was in error in directing a verdict for Farmers in the amount of $3,313.75—the full amount sued for. We of course state the facts in the light most favorable to Goodin's position.

On July 9, 1966, before Goodin had entered the picture, Farmers sold the same tractor—as a used machine and without warranty—to Jim Stratton for a total time price of $6,928.88, payable in a deferred

down payment of $1,005.08 and 36 monthly installments of $164.55 each. After Stratton had paid the down payment and five monthly installments he had no further use for the machine and asked Farmers to resell it for him. At that time, according to the Stratton-Farmers contract. the sum of $5,101.05 was still due According to the proof introduced by Farmers, Goodin purchased the tractor for that sum and obligated himself by signing the original contract that had been executed by Stratton.

When Goodin was sued on the contract he filed an answer asserting fraud on the part of Farmers. Specifically, he said that he could not read or write and that he signed the contract upon the salesman's representation that the amount still owed on the tractor was about $4,000.

At the trial Goodin testified that he informed the salesman for Farmers that he could not read or write (though he admitted in his testimony that he could read numbers and sign his name). Goodin testified that the salesman assured him that only $4,000 was due on the contract, that the document offered to Goodin for signature was a new contract rather than the one already signed by Stratton, and that a schedule of payments would be sent to Goodin by mail. According to Goodin's theory of the case, all three statements were false and call for a cancellation of the contract for fraud.

For the most part we find Goodin's contentions to be without merit. He cannot have been prejudiced by the fact that he was induced to sign the old Stratton contract rather than a new one, because Goodin admits that he understood the price and terms to be the same in either event. Again, it is not material that Farmers failed to send Goodin the promised schedule of payments, for Goodin actually made six monthly payments in the correct amount of $164.55 each. That conduct was certainly a waiver of any complaint that Goodin may have had with respect to the schedule.

In one particular, however, Goodin's proof of fraud was substantial and material. He testified that he was unable to read or write, that he informed the salesman of that fact, and that he signed the contract upon the salesman's representation that the recited price was $4,000. Despite the fact that Goodin's pleadings had stated his position in precise detail, Farmers made no effort to disprove Goodin's asserted inability to read. Under our holding in *Fenter* v. *Obaugh,* 17 Ark. 71 (1856), the jury could have found that the Farmers salesman was guilty of fraud.

It does not follow, however, that Goodin is entitled to a complete reversal of the judgment. According to his own testimony, he intended to purchase the tractor for $4,000 instead of for the unpaid Stratton balance of $5,101.05. Hence, even if the jury had accepted Goodin's version of the matter in its entirety, there should still have been a verdict for Farmers in the amount sued for, less $1,101.05. It follows that the trial court's error in directing a verdict may be corrected with complete justice, as far as Goodin is concerned, by offering Farmers the opportunity to remit the excess of $1,101.05. If such a remittitur is entered by Farmers within seventeen calendar days the judgment as so reduced will be affirmed; otherwise the judgment will be reversed and the cause remanded for a new trial, with Goodin recovering his costs in either event.