FARMERS AND MERCHANTS BANK
*v.* Wayne BARNES

CA 85-186                                705 S.W.2d 450

Court of Appeals of Arkansas
Division II
Opinion delivered March 12, 1986

140

*Croxton & Boyer*, for appellant.

*Davis & Associates, P.A.*, for appellee.

LAWSON CLONINGER, Judge. In this appeal from the decision of a chancellor denying a deficiency judgment, appellant argues two points for reversal. We find neither persuasive, and we affirm the holding of the trial court.

Appellee, Wayne Barnes, purchased a used 1972 Case excavator from Dale Scott in February, 1982, for $35,000. Appellant, Farmers and Merchants Bank of Rogers, Arkansas, financed the sale and obtained a security interest in the equipment. After appellee defaulted on the note, Scott, acting at the direction of appellant, repossessed the excavator in November, 1982. The equipment was stored on Scott's property from

November, 1982, until March, 1984. Appellant bank permitted Scott to use the excavator in his construction business during this period.

In January, 1983, appellant obtained from a Case construction equipment dealer an appraisal of the value of the machinery of between $11,000 and $12,000. The appraiser noted that $1,000 worth of repairs were needed, and he expressed interest in purchasing the excavator for $7,000 to $9,000 for resale.

Appellee received notice from appellant of a private sale for $12,500 to take place on April 20, 1984. This sale, however, was never consummated. Instead, the excavator was sold, without notice to appellee, on June 20, 1984, for $9,500. Appellee's account was credited with $12,500, the amount stated in the notice given him of the proposed sale in April.

In the meantime, appellant filed suit to obtain a deficiency judgment against appellee in the amount of the debt plus interest and expenses less the amount credited. The chancellor held that appellant had not proceeded in a commercially reasonable manner in that it retained the equipment for nineteen months, sold it for $9,500 when two years before it had a value of $35,000, neglected to repair the excavator although repairs would have increased the sale price, and, most significantly, permitted its agent to use the equipment extensively, thus diminishing its value. The burden of proof of the value of the collateral, said the chancellor, was upon the creditor. From the trial court's denial of the deficiency judgment, appellant brings this appeal.

In its first point for reversal, appellant argues that the chancellor erred in finding that the sale of the excavator was not effected in a commercially reasonable manner. According to appellant, every reasonable precaution had been taken to protect appellee's rights and to obtain the highest price possible for the repossessed equipment.

The Uniform Commercial Code, as codified at Ark. Stat. Ann. § 85-9-504 (Supp. 1985), provides that a "secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Further, "every aspect of the disposition including the method, manner,

time, place, and terms must be commercially reasonable."

■■ A creditor who repossesses chattels and resells them in a manner inconsistent with the provisions of the Uniform Commercial Code bears the responsibility to prove that the sale was commercially reasonable before he is entitled to a deficiency judgment. *Rhodes* v. *Oaklawn Bank*, 279 Ark. 51, 648 S.W.2d 470 (1983). Whether a sale of collateral was conducted in a commercially reasonable manner is essentially a question of fact. *Henry* v. *Trickey*, 9 Ark. App. 47, 653 S.W.2d 138 (1983).

The chancellor in the present case enumerated several factors that impelled him to his decision to deny appellant's claim for a deficiency judgment. As mentioned above, one of the considerations was the excessive length of time that had elapsed between repossession and sale. Appellant cited in its brief two cases to support its position that there was nothing unreasonable in the nineteen month holding period. In both *Meachum* v. *Worthen Bank & Trust Co.*, 13 Ark. App. 229, 682 S.W.2d 763 (1985), and *Brown* v. *Ford*, 280 Ark. 261, 658 S.W.2d 355 (1983), however, efforts made by the creditors to sell or repair the collateral offset the effects of long delays. In the instant case, $30 was spent six months after repossession on advertising for 120 days in a trade circular, but no local or statewide notices were run in newspapers with a general circulation.

■ The chancellor also expressed concern over the disparity between the price for which the excavator was sold and the value assigned it when appellee purchased it. The Arkansas Supreme Court, in *Goodin* v. *Farmers Tractor & Equipment Co.*, 249 Ark. 30, 458 S.W.2d 419 (1970), quoted Ark. Stat. Ann. § 85-9-507(2) for the principle that "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially unreasonable manner." In *Goodin*, such proof was the only evidence offered of commercial unreasonableness. Here, however, other questionable elements are present in the record, and the chancellor merely added the $25,500 disparity to his list of reasons for denying appellant's claim.

■ Another factor entering into the chancellor's decision was the failure of appellant to repair the equipment. Ark. Stat.

Ann. § 85-9-504 (1)(a) (Supp. 1985) permits "commercially reasonable preparation or processing" to enhance sale value and allows a creditor to recover the cost of any preparation or repairs. Appellant's own appraiser indicated that about $1,000 in repairs were needed. Testimony at trial revealed that windows on the vehicle were broken, paint was peeling from the body, pins were worn out, teeth were worn off the bucket, and leaks were found on the machine. The chancellor, confronted with this evidence, was entitled to reach the conclusion that some expenditure on repairs would have resulted in a higher sale price.

■ The overriding consideration in the chancellor's mind, finally, was the fact that appellant allowed the original owner, Dale Scott, to use the excavator in his construction business for six months. In *Henry* v. *Trickey, supra,* the creditor rendered a repossessed combine unsalable for approximately one year by loaning its engine to a customer. In the present case, the entire machine was subject to the wear and tear of construction use, and the chancellor had reason to conclude that the sale value of the equipment was diminished in consequence. When all the factors listed by the chancellor are considered together, we believe that it cannot be said that his finding that the sale of the excavator was not effected in a commercially reasonable manner was clearly erroneous or against the preponderance of the evidence.

Appellant's second argument is that the chancellor applied the wrong measure of damages to the sale of the collateral. The judge had ruled that evidence of the use of the excavator by Scott for an extensive period of time indicated a reduction in value but that he was unable to determine the extent to which value was diminished. "As the burden of proof in this regard is upon the creditor," said the chancellor, "a deficiency judgment cannot be granted."

■ If a secured creditor sells collateral in a commercially unreasonable manner, a presumption arises that the value of the collateral is equal to the outstanding debt; the burden then shifts to the creditor to prove that the reasonable value of the collateral was less than the debt. *Henry* v. *Trickey, supra; see also Norton* v. *National Bank of Commerce,* 248 Ark. 143, 398 S.W.2d 538 (1966).

To provide evidence of value, appellant offered the testimony

of Bill Pritchard, a Case construction equipment dealer. Mr. Pritchard appraised the worth of the excavator for a quick sale at between $11,000 and $12,000. The chancellor was entitled to regard this opinion with a degree of skepticism, however, because the witness acknowledged his interest in purchasing the equipment for $7,000 to $9,000 with the hope of realizing a good profit. Moreover, it appears from the record that the appraiser was unaware that the excavator had a new motor at the time it was sold to appellee, a fact that, in his view, would have materially affected the value of the equipment. Pritchard also admitted that he did not start or operate the machine, although it was not customary for him to appraise a vehicle without starting it and moving it forward and backward.

Dale Scott's foreman testified that the excavator was not in as good condition upon repossession as when it had been sold to appellee and that subsequent use by Scott did not alter its condition. Appellee countered that the equipment had suffered abuse as outlined earlier. The chancellor resolved the conflicting evidence in appellee's favor and we find no reason to disturb his conclusion. The finding of the chancellor that appellant failed to meet its burden of proving that the value of the excavator was less than the debt of $35,000 was not clearly against the preponderance of the evidence; a deficiency judgment was properly denied.

Affirmed.

MAYFIELD and CORBIN, JJ., agree.