Frank CHESHIRE v. WALT BENNETT FORD, INC.

CA 89-452                                    788 S.W.2d 490

Court of Appeals of Arkansas
Division II
Opinion delivered May 2, 1990
[Rehearing denied June 6, 1990.*]

---

*Appellee's motion for rule on the clerk is moot.

*Steve Uhrynowycz*, for appellant.

*Wallace, Dover & Dixon*, for appellee.

JOHN E. JENNINGS, Judge. On July 11, 1984, appellant Frank Cheshire bought a 1983 Ford Ranger truck from the appellee Walt Bennett Ford, Inc. Appellant subsequently defaulted on the note and appellee repossessed the truck on July 18, 1985. On July 28, 1986, appellee purchased the truck from itself

at private sale for $1,600.00, and filed this suit against appellant for the $6,800.00 deficiency.

After a non-jury trial the circuit judge awarded a deficiency judgment to appellee, holding that the sale was commercially reasonable because appellee had solicited and obtained four sealed competitive bids from automobile wholesalers and that its own bid was higher than the others.

On appeal Cheshire contends that because appellee impermissibly bought the collateral from itself at private sale, it is barred as a matter of law from obtaining a deficiency judgment. He also contends that the court erred in finding that appellee gave reasonable notice of sale and in finding that the collateral was sold in a commercially reasonable manner.

The disposition of collateral by the creditor after repossession is governed by Ark. Code Ann. § 4-9-504(3) (1987):

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods, no other notification need be sent. In other cases, notification shall be sent to any secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, he may buy at private sale.

The Arkansas Supreme Court has interpreted the last sentence of this code provision with specific regard to used cars as collateral. In *Norton v. National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966), the court held that a used car did not fall within the category of collateral "of a type customarily sold on a recognized market." In *Carter v. Ryburn Ford Sales, Inc.*, 248 Ark. 236, 451 S.W.2d 199 (1970), the supreme court held that used automobiles were not collateral "of a type which is the subject of widely distributed standard price quotations" and that "a secured party is not complying with the Commercial Code when he purchases a used automobile at his own private sale." It is therefore clear that appellee here did not comply with the disposition provision of the code in buying this collateral from itself at private sale.

In *Norton* and *Carter* the supreme court held that the effect of this kind of violation of the code is to create a presumption that the collateral was worth at least the amount of the debt, thereby placing upon the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law. Appellant contends, however, that this rule was changed by the supreme court's decision in *First State Bank of Morrilton v. Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987), and certainly language in that case supports appellant's position. In *Hallett* there was an admitted failure on the part of the creditor to give proper notice of sale to the debtor. The supreme court affirmed the trial court's holding that the creditor was not entitled to a deficiency judgment under the court's earlier decision in *Rhodes v. Oaklawn Bank*, 279 Ark. 51, 648 S.W.2d 470 (1983). In *Rhodes* the court had said:

> When a creditor repossesses chattels and sells them without sending the debtor notice as to time and date of sale, or as to a date after which the collateral will be sold, he is not entitled to a deficiency judgment, unless the debtor has specifically waived his rights to such notice.

This principle has been called the "absolute bar rule." *See* 2 J. White & R. Summers, *Uniform Commercial Code* § 27-19 at 629 (3d ed. 1988). The *Hallett* court relied primarily on *Rhodes* and on *Atlas Thrift Co. v. Horan*, 27 Cal. App. 3rd 999, 104 Cal. Rptr. 315 (1972).

The *Hallett* court characterized *Norton* and *Carter* as "an earlier line of cases which took a different approach to this issue," and said "[w]e think *Rhodes* represents the right approach and, although it did not expressly overrule these cases, its effect was to change our law." The court in *Hallett* continued:

> The creditor's right to a deficiency judgment is not merely subject to whether the debtor has a right to damages under § 85-9-507, but instead depends on whether he has complied with the statutory requirements concerning disposition and notice.
>
> . . . .
>
> The *Horan* court concluded: "The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment."
>
> When the code provisions have delineated the guidelines and procedures governing statutorily created liability, then those requirements must be consistently adhered to when that liability is determined. Here, [the creditor] failed to comply with the code's procedures for disposition of collateral and is therefore not entitled to a deficiency judgment under the code.

*Hallett*, 291 Ark. at 41-42 (citations omitted.)

The quoted language supports the position that any violation of the code related to disposition of the collateral will absolutely bar a deficiency judgment, but *Hallett*, like *Rhodes* and *Horan*, was a case which involved failure to give notice.

Although the broad language in *Hallett* is dicta, we would follow it were there not other indications of the direction in which the supreme court intends to go. As noted in *Hallett*, the court in *Rhodes* did not expressly overrule *Norton, supra*. Indeed the *Rhodes* court said:

> When a creditor repossesses chattels and resells them in a manner not consistent with the code it is his responsibility to prove the sale was commercially reasonable before he is entitled to a deficiency judgment. *Harper v. Wheatley*, 278 Ark. 27, 643 S.W.2d 537 (1982). *See also Universal C.I.T.*

v. *Rone*, 248 Ark. 665, 453 S.W.2d 37 (1970). We remanded *Harper* to the trial court for a determination of commercial reasonableness because such proof was disallowed at trial. *The matter of lack of notice was not decided in Harper.*

*Rhodes*, 279 Ark. at 54-55 (emphasis added).

It would thus seem that the *Rhodes* court expressly reaffirmed the rule established in *Norton* for cases involving code violations other than failure to give notice. Finally, in *Hallmark Cards, Inc.* v. *Peevy*, 293 Ark. 594, 739 S.W.2d 691 (1987), the supreme court had occasion to restate its holding in *Hallett*: "We held clearly that the right to any deficiency judgment was dependent upon the secured party having complied with the notice requirement." When *Hallett* is read in conjunction with *Rhodes* and *Peevy*, it appears that the "absolute bar rule" is applicable only to those cases in which there has been failure to give notice. It follows that when there has been some other violation of the Commercial Code, the creditor may still obtain a deficiency judgment if he meets the burden imposed by the rule in *Norton*.

Section 4-9-504 requires that "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor" in absence of a waiver of notification by the debtor. Here, after repossession of the truck, appellee sent a letter by certified mail, return receipt requested, to appellant at a North Little Rock address, informing him that the truck would be sold at private sale on or after August 17, 1985. Appellant challenged the reasonableness of this notice, apparently because it was mailed to an address other than that shown on the contract of sale. While appellant admitted that he no longer lived at the address shown on the contract, he denied living at the North Little Rock address. The North Little Rock address to which the notice was sent was the location from which the truck was repossessed, was where appellant's wife lived, and was considered by appellee to be appellant's "last known address." The trial court found that appellee sent reasonable notice in compliance with section 4-9-504(3). That factual finding is not clearly against a preponderance of the evidence. *See* Ark. R. Civ. P. 52.

■■ Whether a sale was conducted in a commercially reasonable manner is also a question of fact. *Womack v. First State Bank of Calico Rock*, 21 Ark. App. 33, 728 S.W.2d 194 (1987); *Farmers and Merchants Bank v. Barnes*, 17 Ark. App. 139, 705 S.W.2d 450 (1986); *Henry v. Trickey*, 9 Ark. App. 47, 653 S.W.2d 138 (1983). Phil Schmidt, appellee's assistant general manager, testified about the truck's repossession and resale. He stated that the truck had "excessive milage" and was in poor condition. Appellee reconditioned the truck by having dents fixed, touching up the paint and detail stripes, fixing the seats and upholstery, having a bed liner installed to cover scratches and wear, and by replacing a battery and tire. The truck was immediately put on appellee's used car lot for retail sale. He testified that the truck's having a diesel engine made it "a little harder to resell than a gasoline engine." Schmidt testified that he knew of two or three deals on the truck that fell through when the prospective buyers couldn't get financing. He testified that after the truck remained unsold it "depreciated to the point that we had to put it on our line to wholesale." He stated that appellee regularly notified area wholesalers of sales, and that wholesalers would come and look at as many as 30-50 units and then bid on the vehicles. Normally, sealed bids are submitted, with the vehicles going to the highest bidder. Schmidt testified that four wholesalers submitted bids on this truck, in amounts of $1000, $1300, $1350, and $1500. Appellee also bid on the truck, and its bid of $1600 was the highest, and in Schmidt's opinion was "fair and reasonable." The trial court found that appellee took sealed competitive bids and that appellee's bid was $100 higher than the others, and that the collateral was disposed of at private sale in a commercially reasonable manner. Again we cannot say that these findings were clearly against the preponderance of the evidence.

Affirmed.

CRACRAFT and ROGERS, JJ., agree.