Amy E. BEARD *v.* FORD MOTOR CREDIT COMPANY

CA 92-1010                                    850 S.W.2d 23

Court of Appeals of Arkansas
Division I
Opinion delivered March 31, 1993

176

*Pope, Shamburger, Buffalo & Ross*, by: *Brad A. Cazort*, for appellant.

*The Hicks Law Firm*, by: *Mickey L. Scott*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Amy Beard appeals from an order of the circuit court of Pulaski County granting appellee Ford Motor Credit Company a deficiency judgment of $5,378.08 against her. Appellant contends that appellee was not entitled to a deficiency judgment because it did not adhere to the provisions of the Uniform Commercial Code. We find no error and affirm.

On October 20, 1989, appellant signed a contract for the purchase of a 1989 Ford Tempo. Appellant had difficulty making the payments on the car and on May 10, 1991, she returned the car to appellee. By letter dated that same date, appellant received notice that the car would be sold at a private sale any time ten days after the date of the notice. The car was sold the next month by 166 Auto Auction of Springfield, Missouri, for $3,300.00

For reversal, appellant argues that the trial court erred in (1) admitting unqualified testimony and hearsay to establish that the sale was by a dealers-only auction and commercially reasonable; (2) finding that the auction was a private sale rather than a public sale; and (3) failing to find that appellee was estopped to collect a deficiency judgment.

At trial, Michael Rattler, customer service representative for appellee, testified that in his job he deals with all aspects of the customers' accounts. He stated that appellant's car was sold at a dealers-only auction at the 166 Auto Auction in Springfield, Missouri. Although he is not familiar with this particular auction company, he said, dealers-only auctions are the standard method

used by Ford, Chrysler, and GMAC to sell repossessed cars. He stated that dealers are notified of the auctions by flyers and the public is not invited to the sales nor allowed to participate in the sales. He said that Ohio is the only state that requires public auctions.

Included in the record is a two-page exhibit. One page sets forth 166 Auto Auction's rules and polices and contains information about the sale of appellant's car. The second page is a copy of a check issued to appellee from 166 Auto Auction and the check stub which summarizes the expenses of the sale. The rules and policies page includes a statement that no retail sales are allowed and that failure to comply with the rules prohibits doing business with the company. At the bottom of the page is a statement that: "This sale is solely a transaction between the buying and selling dealers."

Appellant first argues that the trial court erred in admitting unqualified testimony and hearsay. Appellant contends that Mr. Rattler was not qualified to testify as to how repossessed cars are generally sold and in particular how appellant's car was sold. Initially, we note that a trial judge has wide discretion in determining the qualification of witnesses and the admissibility of evidence. *Mitchael* v. *State*, 309 Ark. 151, 156, 828 S.W.2d 351, 354 (1992). A witness may not testify to a matter unless he has personal knowledge of the matter, *see* Ark. R. Evid. 602, and based on Mr. Rattler's statements regarding his familiarity with appellee's business, we cannot say that the trial judge abused his discretion in finding the witness competent to testify to the practice employed by appellee in the sale of repossessed cars or to the practice generally followed by the automobile industry.

Appellant also contends that the trial court erred in admitting the statement from 166 Auto Auction as a business record within the hearsay exception provided in Ark. R. Evid. 803(6). The rule provides that records of a regularly conducted business activity are not excluded by the hearsay rule from evidence "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." The business records exception to the hearsay rule has been interpreted to have seven requirements. To be admissible under

this exception, the evidence must be (1) a record or other compilation, (2) of acts or events, (3) made at or near the time the act or event occurred, (4) by a person with knowledge, or from information transmitted by a person with knowledge, (5) kept in the course of a regularly conducted business, (6) which has a regular practice of recording such information, (7) as shown by the testimony of the custodian or other qualified witness. *Terry* v. *State*, 309 Ark. 64, 67, 826 S.W.2d 817, 819 (1992). Mr. Rattler testified that he is familiar with, and on a daily basis has access to, the records which are maintained by appellee in the regular course of its business. He stated that the records are maintained by people with knowledge of the events and are prepared near or at the time these events took place. He testified that appellant's file showed the car had been sold at a dealers-only auction. The statement received by appellee from 166 Auto Auctions, which was included in appellee's business records, was admitted into evidence.

Appellant argues that the check and itemization of expenses were properly admitted under the business records exception but that it was error to admit that part of the exhibit stating that the company which sold the car conducts dealers-only auctions exclusively. Appellant asserts that this court's holding in *Marshall Trucking Co.* v. *State*, 23 Ark. App. 110, 743 S.W.2d 16 (1988), supports her argument. In that case, Marshall attempted to prove that a police officer's assessment of the weight of Marshall's truck was inaccurate by admitting into evidence a different weight ticket resulting from Marshall's truck being weighed upon arrival at a mill and again after being emptied of its timber cargo. We stated:

> Although there is no prohibition against one company integrating records made by another into its own business records, the party offering the record must still establish by a competent witness that its content is worthy of belief. The mere fact that the memorandum is retained in appellant's files does not supply the required foundation for admission.

23 Ark. App. at 114, 743 S.W.2d at 18 (citation omitted). In that case the trial court noted that no one had testified to the accuracy of the scale used at the mill, the qualifications of the operator to weigh the truck and make the record entry, or any of the other

circumstances under which the record was made. We concluded that the trial court did not abuse its discretion in holding that the record was not competent to prove the truth of the matters asserted in it, was not worthy of belief, and should be excluded. *Marshall Trucking Co.* v. *State*, 23 Ark. App. at 114-15, 743 S.W.2d at 18.

Appellee refers this court to a case in which the trial court, in making a determination of the commercial reasonableness of a sale, admitted into evidence an exhibit consisting of the seller's record of the auction sale which was prepared by the company that conducted the auction. *United States* v. *Whitehouse Plastics*, 501 F.2d 692 (5th Cir. 1974), *cert. denied* in *sub nom. Baker* v. *United States*, 421 U.S. 912 (1975). Included in the exhibit were copies of advertisements placed by the auction company concerning the sale, records of expenses incurred in conducting the sale, and invoices to buyers at the sale with a description of and the prices received for the property sold. The court rejected an argument that the exhibit was not properly within the business records exception to the hearsay rule. *Id.* at 697.

In the case at bar, we believe the trial court could have found the information on the statement from 166 Auto Auction competent evidence. The information is supported by Mr. Rattler's testimony, in which he also said that it is appellee's practice to sell repossessed cars at dealers-only auctions because appellee has determined that such sales bring the highest prices for repossessed cars. We also note that the statement from the auction company is the type of record a company such as appellee must rely on for assurance that their directives are being followed. It would be unrealistic to expect appellee to have a representative at each sale of a repossessed car, especially when that sale is in another state. We find that the information on the exhibit about how the sales are conducted is no less credible than the statement of expenses and the sale price, to which appellant does not object, nor any less credible than the advertisements allowed into evidence in *United States* v. *Whitehouse Plastics*, cited above. We do not find the same lack of trustworthiness that this court found in *Marshall Trucking Co.* v. *State*, cited above. Therefore, we cannot say the trial court abused its discretion in finding the information on the exhibit competent testimony.

With the admittance of appellee's evidence, it is established that appellant's car was sold at a dealers-only auction and we must address appellant's argument that a dealers-only auction is a "public sale." Appellant contends that because she did not receive notice of the time and place of the sale of her car, appellee is not entitled to a deficiency judgment.

■ Arkansas Code Annotated § 4-9-504(3) (Repl. 1991) provides in pertinent part:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . .

See also Anglin v. Chrysler Credit Corp., 27 Ark. App. 173, 175, 768 S.W.2d 44, 45 (1989). Here, the notice stated that the car would be sold at a private sale any time ten days after the date of the notice. While the Code requires that notice of the place of the sale must be given to the debtors when disposition is to be made by public sale, no such requirement exists for disposition by private sale. In their treatise, Uniform Commercial Code, James White and Robert Summers note that:

> [N]otice of a public sale must contain different information from that announcing an intent to sell privately. In the latter case, the notice need only state "the time after which" the collateral is to be sold; in the case of a public sale, it must state "the time and place" at which the sale will occur.

James J. White & Robert S. Summers, Uniform Commercial Code, § 26-10, at 1113 (2d ed. 1980). The distinction between private sale and public sale was also recognized by the Arkansas Supreme Court in Barker v. Horn, 245 Ark. 315, 316, 432 S.W.2d 21, 22 (1968), where the court stated that, although the statute requires notice of the time and place of public sale, only reasonable notification of the time after which a private sale will be made is required.

The Code does not define either public sale or private sale,

and this court has not previously addressed whether a dealers-only auction is a public sale or a private sale in the context of Article 9 of the Uniform Commercial Code. Appellant contends that Arkansas courts have consistently followed the definition of public sale as "one made at auction to the highest bidder," as established in *Union & Mercantile Trust Co. v. Harnwell*, 158 Ark. 295, 301, 250 S.W. 321, 323 (1923). We held in *General Electric Credit Auto Lease, Inc. v. Paty*, 29 Ark. App. 30, 32-33, 776 S.W.2d 829, 831 (1989), that under the facts of the case we could not say that a sale made at auction to the highest bidder was not a public sale as found by the trial court. However, in that case there was nothing in the record that suggested that the auction was restricted to dealers only or that it was not open to the general public. We also note that the supreme court in *Union & Mercantile Trust Co. v. Harnwell* went on to say that "a public sale could not be conducted unless the public were invited to participate therein." 158 Ark. at 303, 250 S.W. at 323. Therefore, it is clear that other factors may be relevant to the determination of whether an auction to the highest bidder is a public sale.

In his treatise, *Uniform Commercial Code*, author Ronald Anderson discusses the elements of a public sale:

> A sale of collateral is "public" when it is publicly advertised, the sale is open to the public, and the sale is made, after competitive bidding, to the highest genuine bidder; as at an auction.

> The opportunity of the public to bid at the sale is the essential criterion that determines that the sale is a public sale . . . .

9 Ronald A. Anderson, *Uniform Commercial Code* § 9-504:32, at 733 (3d ed. 1985).

> The text of the Code is silent on how public and private sales are to be differentiated. Comment One to 9-504 directs us to 2-706 where Comment 4 defines a public sale as an auction. Yet not every sale by auction is a public sale. Some case law is more helpful. Thus, in Lloyd's Plan Inc. v. Brown [268 N.W.2d 192 (Iowa 1978)], the Iowa Supreme Court said that: "The essence of a public sale is

that the public is not only invited to attend and bid but is also informed when and where the sale is to be held." Other courts have, in the same spirit, stressed that a public sale is one open to the general public or a major segment thereof, and thus contemplates advertising of the notice, time and place of the sale. A private sale, by contrast, is not open to the general public, usually does not occur at a pre-appointed time and place, and may or may not be generally advertised.

James J. White & Robert S. Summers, *Uniform Commercial Code* § 27-10, at 594 (3d ed. 1988).

The RESTATEMENT OF SECURITY § 48, comment c at 139-40 (1941), defines a public sale as "one to which the public is invited by advertisement to appear and bid at auction for the goods to be sold." *Accord Roanoke Indus. Loan and Thrift Corp. v. Bishop*, 482 F.2d 381, 384 (4th Cir. 1973); *Fidelity Consumer Discount Co. v. Clark*, 333 Pa. Super. 306, 482 A.2d 580, 582 (1984); *Lavender v. AmSouth Bank, N.A.*, 539 So.2d 193, 195 (Ala. 1988); *Liberty Nat'l Bank of Fremont v. Greiner*, 62 Ohio App. 2d 125, 405 N.E.2d 317, 321 (1978). In *Ford Motor Credit Co. v. Solway*, 825 F.2d 1213 (7th Cir. 1987), the court found an auction in which only automobile dealers could participate a private sale. The court concluded that to term the auction a public sale would not conform with the usual meaning of the word public because the public consists of more than automobile dealers. 825 F.2d at 1218. In *Garden National Bank of Garden City v. Cada*, 241 Kan. 494, 738 P.2d 429 (1987), the court found a dealers-only auction was not public in character. The court concluded that a sale at an auto auction, which is limited to automobile dealers and from which the public is precluded from participating, is a private sale. 738 P.2d at 432.

In *John Deery Motors, Inc. v. Steinbronn*, 383 N.W.2d 553 (Iowa 1986), the court also found a dealers-only auction not public in character. This case is discussed by Professor Barkley Clark in his treatise on secured transactions as follows:

It is important that the notice of sale correctly indicate whether the sale is public or private. In *John Deery Motors, Inc. v. Steinbronn*, the notice indicated a private sale. The repossessed automobile was sold through

a dealer auction. When the secured creditor sought a deficiency, the debtor argued that the notice was defective because the dealer auction was in reality a public sale. The Iowa Supreme Court, in the absence of a definition of "public sale" in the UCC itself, turned to Webster's, where the term "public" is defined as "accessible to or shared by all members of the community." Since the dealer auction was open only to automobile dealers, it was closed to some aspect of the market; therefore, the court held that it was a private sale, notwithstanding that the method of disposition at the sale was an auction. Because the sale was private, and thus consistent with the language in the notice sent to the debtor, the deficiency claim was allowed. The holding is significant, because a dealer auction is a very typical method of disposing of motor vehicle collateral. The analysis of the Iowa court seems correct.

Barkley Clark, *Law of Secured Transactions Under the Uniform Commercial Code*, § 4.08(2) at 4-98 (1988). The court in *John Deery Motors, Inc.*, also noted that case authority, commentators, and the RESTATEMENT OF SECURITY supported its determination that the sale was not a public sale. 383 N.W.2d at 555.

In light of the foregoing, we are persuaded that the court was correct in finding that the dealers-only auction, which was restricted to the participation of other dealers, was a private sale. Therefore, the notice received by appellant of the sale of her car satisfied the requirements of the Uniform Commercial Code.

Appellant also argues that the sale of her car was not commercially reasonable, as required by Ark. Code Ann. § 4-9-504(3) (Repl. 1991). Whether a sale of collateral was conducted in a commercially reasonable manner is essentially a factual question; and the findings of fact of a circuit court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence. In making that determination, this court gives due regard to the superior opportunity of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Jones* v. *Union Motor Co., Inc.*, 29 Ark. App. 166, 174, 779 S.W.2d 537, 542 (1989).

Appellant contends that the trial court erred in admitting

Mr. Rattler's testimony as to the value of appellant's car. However, we need not address this issue because we do not believe that Mr. Rattler's opinion of the car's value is essential to a determination of the commercial reasonableness of the sale in this case. Appellant cites *Holiman* v. *Hagan's Motors, Inc.*, 32 Ark. App. 62, 796 S.W.2d 356 (1990), as authority for his contention that in order to prove that the sale was commercially reasonable appellee was required to show that the sales price of the collateral reflected the fair market value. Appellant's reliance is misplaced. *Holiman* involved a private sale of a repossessed vehicle by the secured creditor where a trade-in was accepted as part of the sales price. This court stated:

> *Thrower* v. *Union Lincoln-Mercury, Inc.*, 282 Ark. 585, 670 S.W.2d 430 (1984), holds that surplus or deficiency should be computed on the basis of the fair market value of any trade-in vehicle together with cash received by the dealer, rather than on the basis of the trade-in allowance given by the dealer to the purchaser of the collateral.

Here, we do not have a trade-in vehicle which must be taken into account in arriving at a deficiency.

The sale of the car may not have brought as high a price as appellant would have hoped, but Mr. Rattler testified that the car had unusually high mileage on it for a year-old car. Mr. Rattler also said that the car was sold at a dealers-only auction because appellee believed such a sale would bring the highest price possible for the car. In addition, appellee sold the car promptly after repossession.

In light of the evidence, we cannot say the trial court's finding that the sale was commercially reasonable is clearly against the preponderance of the evidence.

Appellant's final point for reversal is that the trial court erred in not finding appellee estopped to collect a deficiency judgment. At trial, appellant testified that after returning the car to appellee, she arranged for a friend who is a car dealer to buy the car and then refinance it for appellant. When she received notice that the car would be sold at a private sale, appellant said, she called Ford Motor Credit Company and was told by an employee that the car would be repaired and then sold on the car lot. After

finding out the car would be sold on the lot, appellant stated, she and her friend decided it would be best not to buy it because they thought the price of the car would be raised. On appeal, she contends that she relied to her detriment on the employee's statements. Appellee argues that appellant did not preserve the issue of estoppel for appeal.

A party who by his acts, declarations, or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *Bethell* v. *Bethell*, 268 Ark. 409, 424, 597 S.W.2d 576, 583 (1980). As a general rule, estoppel must be affirmatively pled; however, this rule disappears when facts regarding estoppel are admitted into evidence or become an issue in the case without objection. *Arkansas Dept. of Human Servs.* v. *Cameron*, 36 Ark. App. 105, 107-08, 818 S.W.2d 591, 593 (1991).

In the case at bar, appellant received proper notice of the time after which the car would be sold by appellee, and she chose not to take that opportunity to redeem the car. Appellee was not required to notify appellant of the date and time of the private sale of the car, but even if appellee had done so, appellant would not have been allowed to participate in the auction. A party claiming estoppel must prove she has relied in good faith on wrongful conduct and has changed her position to her detriment, *Christmas* v. *Raley*, 260 Ark. 150, 158, 539 S.W.2d 405, 410 (1976), and appellant failed to present such proof in this case.

Affirmed.

JENNINGS, C.J., and PITTMAN, J., agree.