EAGLE BANK & TRUST COMPANY *v.*
Kurt DIXON and Big Mamou, Inc.

CA 99-1187                                          15 S.W.3d 695

Court of Appeals of Arkansas
Division III
Opinion delivered May 3, 2000

*Williams & Anderson, LLP*, by: *Leon Holmes* and *Timothy W. Grooms*, for appellant.

*James & Carter, PLC*, by: *Daniel R. Carter*, for appellees.

JOSEPHINE LINKER HART, Judge. This is an appeal from the trial court's refusal to award a deficiency judgment following a sale of collateral. The trial court found that the sale had not been conducted in a commercially reasonable manner. We affirm.

In 1996 and 1997, appellant Eagle Bank & Trust made two loans to appellee Kurt Dixon totaling $45,000. The loans were secured by the furniture, fixtures, and equipment used in the operation of appellee's restaurant, Big Mamou. On November 18, 1998, appellee sold the assets of the restaurant to Club Rio, USA, Inc.[1] Thereafter, Club Rio took possession of the premises, including the

---

[1] Appellant was aware of the sale. The contract between appellee and Club Rio provided that, in addition to other consideration, Club Rio, as buyer, would "assume the outstanding balance due and owing [appellant] effective December 1, 1998, until paid in full."

furniture, fixtures, and equipment.[2]

On December 23, 1998, appellant filed suit against appellee in Pulaski County Circuit Court alleging that he had defaulted on the loans. The court issued an order of delivery allowing appellant to take immediate possession of the collateral, and appellee was notified that the collateral would be sold at a private sale. However, the sale never took place. Shortly after the order of delivery was issued, appellant's representative visited Club Rio to inspect the collateral and discovered that some of it was either missing or destroyed. As a result, appellant filed an amended complaint adding Club Rio as a defendant and asserting a cause of action for conversion. Attached to the complaint was the affidavit of Susan Barre, appellant's assistant vice-president and loan officer. Barre stated that she had seen the collateral and believed that its value was sufficient to satisfy appellee's debt.

Within days after the amended complaint was filed, appellant sold the collateral to Club Rio for $22,500 and moved to dismiss Club Rio from the lawsuit because a settlement was reached. The motion was granted, and appellant proceeded to trial seeking a deficiency judgment of approximately $18,000 against appellee. That sum represented the amount owed on the loans (approximately $40,500) less the $22,500 received from Club Rio as settlement. Appellee contended that appellant was precluded from seeking a deficiency judgment because the sale of the collateral was not conducted in a commercially reasonable manner. The trial judge agreed and found that appellant's disposition of the collateral was not a commercially reasonable sale but rather the settlement of the lawsuit between appellant and Club Rio. He also found that the price obtained for the collateral was not commercially reasonable given appellant's strong bargaining position with Club Rio (Club Rio was using the collateral to operate its restaurant), and the fact that appellant's representative, Susan Barre, stated in her affidavit that the value of the collateral was equal to the value of appellee's remaining debt, i.e., approximately $40,000. The trial court denied appellant's complaint for a deficiency judgment, and this appeal followed. On appeal, appellant argues that the trial court erred in

---

[2] Club Rio obtained possession by forcing Dixon to leave the premises, with the assistance of law enforcement officers. Dixon filed a federal court lawsuit as a result, and appellant was aware of the suit.

finding that the sale was not conducted in a commercially reasonable manner.

■ Every aspect of the disposition of collateral, including the method, time, manner, place, and terms must be commercially reasonable. *See* Ark. Code Ann. § 4-9-504(3) (Repl. 1991). Once the collateral has been disposed of, the debtor remains liable for any deficiency. Ark. Code Ann. § 4-9-504(2) (Repl. 1991). However, a creditor may be barred from seeking a deficiency judgment if the sale of the collateral was not commercially reasonable. *See First Nat'l Bank of Wynne v. Hess*, 23 Ark. App. 129, 743 S.W.2d 825 (1988); *Farmers & Merchants Bank v. Barnes*, 17 Ark. App. 139, 705 S.W.2d 450 (1986). Whether a sale has been conducted in a commercially reasonable manner is essentially a factual question. *See Mercantile Bank v. B & H Associated, Inc.*, 330 Ark. 315, 954 S.W.2d 226 (1997). A trial court's finding on such a question will not be reversed unless it is clearly against the preponderance of the evidence. *See Jones v. Union Motor Co., Inc.*, 29 Ark. App. 166, 779 S.W.2d 537 (1989). It was appellant's burden to prove that the sale proceeded in a commercially reasonable manner. *See Mercantile Bank v. B & H Associated, Inc., supra.*

At trial, appellant's case centered on the testimony of its assistant vice-president, Susan Barre. Barre testified that, after the order of delivery was issued, she made contact with Club Rio and attempted to repossess the collateral. She examined the collateral on two separate occasions and saw that it included various tables, chairs, and kitchen equipment. According to her, the collateral was not in the best condition, and five or six small items were missing. She admitted that she originally thought the bank would receive the $40,000 still owed on the loans, based on Club Rio's offer to assume the loans (which the bank rejected). However, Club Rio offered only $20,000 to purchase the collateral, and the bank countered with a $30,000 offer. After negotiations, Club Rio and the bank agreed to the final $22,500 figure. Club Rio paid that amount and was released from all liability in connection with the bank's lawsuit, including liability for conversion.

At trial, Barre offered her opinion that, based upon her experience, $22,500 was a fair price for the collateral. She also said that, by selling the collateral to Club Rio, the bank did not have to pay any storage, moving, or selling costs that would ultimately have

been borne by appellee. However, on cross-examination, she admitted that an appraisal of the collateral was not conducted. Further, she was unable to explain why, in her affidavit attached to the bank's amended complaint, she stated that the value of the collateral was sufficient to satisfy appellee's debt.

The only other evidence of the value of the collateral came from the testimony of appellee. He said that, based upon his experience in the restaurant business, the collateral was worth $45,000 to $50,000.

■ Appellant argues on appeal that the trial judge's finding of a lack of commercial reasonableness was improperly based upon appellee's argument that an inadequate price was received for the collateral. It is well settled under Arkansas law that price alone is not dispositive of whether a sale is commercially reasonable. See *Goodin v. Farmers Tractor & Equip. Co.*, 249 Ark. 30, 458 S.W.2d 419 (1970); *Prince v. R & T Motors, Inc.*, 59 Ark. App. 16, 953 S.W.2d 62 (1997). *See also* Ark. Code Ann. § 4-9-507(2) (Repl. 1991). To establish commercial unreasonableness, decidedly stronger proof is needed than an inadequate sale price. See Goodin v. Farmers Tractor & Equip. Co., supra. However, a large discrepancy between the sale price and the fair market value of the collateral signals a need for close scrutiny of the sale procedures. See *Womack v. First State Bank of Calico Rock*, 21 Ark. App. 33, 728 S.W.2d 194 (1987). The trial court in this case did not base its ruling merely on sale price, but acknowledged that a court is required to look at the time, method, and place of the sale as well as the price. In arriving at a decision, the trial court focused on two aspects of the sale other than price. First, the court noted the discrepancy between Barre's testimony at trial that the collateral was worth $22,500 and her statement in her affidavit that the collateral had sufficient value to cover a $40,000 debt. This discrepancy reflected on the credibility of Barre, appellant's primary witness, who bore the responsibility of meeting appellant's burden of proof.

■■ On appeal, the trial court's determination of credibility is considered in deciding whether the findings were clearly against the preponderance of the evidence. See *Beard v. Ford Motor Credit Co.*, 41 Ark. App. 174, 850 S.W.2d 23 (1993). We defer to the trial court's superior ability to judge the credibility of the witnesses and the weight to be given their testimony. See *id.* Barre could not

explain the discrepancy in her statements. Therefore, the trial court may well have found that Barre's testimony at trial regarding the value of the collateral was not credible and concluded that the bank sold the collateral to Club Rio for $22,500 knowing the price was far below the collateral's true value. Ultimately, commercial reasonableness requires that the secured party act in good faith to maximize returns on collateral. *See Marks v. Powell*, 162 B.R. 820 (E.D. Ark. 1993).

■ ■ Secondly, the trial court determined that the disposition of the collateral was a settlement of a lawsuit between appellant and Club Rio rather than an actual sale. The importance of this consideration lies in the fact that appellant may have acted strictly in its own interest for the purpose of ending litigation without regard to whether the disposition of the collateral was commercially reasonable. Further, a secured party's desire to settle may prevent it from seeking other potential buyers of collateral, a factor that has been considered in determining commercial reasonableness. *See Mercantile Bank v. B & H Associated, Inc.*, *supra*. Accordingly, we hold that the sale of collateral in this case was not conducted in a commercially reasonable manner and affirm.

Affirmed.

JENNINGS and ROAF, JJ., agree.