Billie J. GREENLEE *v.* MAZDA AMERICAN CREDIT

CA 04-984                                                   214 S.W.3d 290

Court of Appeals of Arkansas
Opinion delivered September 28, 2005

---

*Hodson, Woods & Snively*, by: *Michael Hodson*, for appellant.

*Jack, Lyon & Jones, P.A.*, by: *John W. Fink*, for appellee.

ANDREE LAYTON ROAF, Judge. Billie J. Greenlee appeals from the Washington County Circuit Court's order granting appellee Mazda American Credit (Mazda) a deficiency judgment in connection with the repossession of her car. On appeal, Greenlee argues that the trial court erred in (1) determining that Mazda conducted a commercially reasonable sale; and (2) finding that Mazda's notice of sale was sufficient where evidence showed that the notice was not sent to her "last known address." Because we find that Mazda did not demonstrate that the sale was conducted in a commercially reasonable manner, we reverse.

On November 13, 2003, Mazda filed a complaint in the Washington County Circuit Court alleging that, on October 20, 2000, Greenlee[1] purchased a 1995 Chevrolet Tahoe; that the vehicle was financed through Mazda; that Greenlee subsequently defaulted on the payments; that the vehicle was sold at a commercially reasonable sale; and that a $6,069.37 deficiency was owed. Greenlee responded to the complaint on December 4, 2003, and denied the allegations that the vehicle had been sold at a commercially reasonable sale and that a $6,069.47 deficiency was owed.

The case was heard with the trial judge sitting as the finder of fact. At trial, Mazda submitted (1) the credit application completed by Greenlee; (2) the credit application completed by Robert Bailey; (3) the installment sales contract executed by Greenlee, Bailey, and Mazda; (4) the charge-off history for Greenlee; (5) notice of intent to sell the vehicle, addressed to Bailey; (6) notice of intent to sell the vehicle, addressed to Greenlee; (7) statement of the sale of the vehicle, addressed to Bailey; and (8) statement of the sale of the vehicle, addressed to Greenlee. These exhibits were admitted into evidence without objection.

Mazda put on testimony from one witness, Tim Tucker, a dealer account manager for Promise Financial Services, the company responsible for administering Mazda's credit program. Tucker testified that he was familiar with Mazda's books, records, and accounts. Other than his testimony that he recognized the

---

[1] The complaint also named Robert L. Bailey as a defendant; however, he is not a party to the instant appeal, and therefore, we will only refer to Bailey when relevant.

exhibits being offered into evidence, Tucker offered very little testimony on direct examination. He testified that the amount owed on the Greenlee contract was $11,809.76; that the proceeds of the sale were $6100; and that the remaining balance totaled $5709.76. He also testified that there were $343 in additional expenses for "reconditioning" and "selling." That was the extent of Tucker's testimony on direct examination.

On cross-examination, Tucker admitted that he lacked any personal knowledge regarding any activities surrounding the sale of the vehicle or the signing of the sales contract. He stated that he knew the sale was an "auction," and that exhibits five and six showed that the sale of the vehicle was a "private" sale. He, however, did not personally notify Greenlee of the sale, and could only state that the notice of intent to sell indicated that the vehicle would be sold at a private sale some time after ten days from the date of the notice.

Following this testimony, Mazda rested, and Greenlee moved for a directed verdict. In support of her motion, Greenlee first argued that notice of the sale should have been sent to her "last known address." Second, she argued that Mazda presented no testimony about the commercial reasonableness of the sale. The trial court denied the motion and entered a judgment for Mazda in the amount of $6,052.77. Greenlee brings this appeal.

For her first point on appeal, Greenlee argues that the trial court erred in finding that the sale was commercially reasonable as Ark. Code Ann. § 4-9-504(3) (Repl. 1991)[2] requires. Whether the sale of collateral was conducted in a commercially reasonable manner is essentially a factual question, and the trial court's findings of fact will not be reversed on appeal unless clearly against the preponderance of the evidence. *Beard v. Ford Motor Credit Co.*, 41 Ark. App. 174, 850 S.W.2d 23 (1993). In making that determination, this court gives due regard to the superior opportunity of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Id.*

---

[2] Greenlee entered into the installment-sale contract on October 20, 2000. At the time of the sale of the vehicle Ark. Code Ann. § 4-9-504(3) (Repl. 1991) was in effect. The Code was amended in 2001 by Act 1439 § 1 and went into effect on July 2001. The disposition of the collateral occurred in 2003, after the effective date of the Amendment. However, the language of the pre-2001 provision and the newly-acted provision are substantially the same.

Arkansas Code Annotated section 4-9-504(3) provides in relevant part:

> (1) A secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.
>
> * * *
>
> (3) Disposition of the collateral may be by public or private proceeding and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.

*See also Eagle Bank and Trust Co. v. Dixon*, 70 Ark. App. 146, 149, 15 S.W.3d 695, 697 (2000) (holding, "Every aspect of the disposition of collateral, including the method, time, manner, place, and terms must be commercially reasonable."). Once the collateral has been disposed of, the debtor remains liable for any deficiency. Ark. Code Ann. § 4-9-504; *Dixon, supra.* However, a creditor may be barred from seeking a deficiency judgment if the sale of the collateral was not commercially reasonable. *Dixon, supra.* The creditor bears the burden of proving that the sale proceeded in a commercially reasonable manner. *Id.*

In our survey of case law, it is apparent that those cases analyzing the commercial reasonableness of a sale of collateral contain specific testimony concerning the disposition of the collateral and factors affecting the disposition. For example, in *Dixon, supra,* the creditor's witness testified that she examined the collateral that was the subject of the deficiency on at least two separate occasions. According to her, the collateral included various kitchen equipment, which, she opined, was not in "the best condition," and some items were missing. *Id.* at 149, 15 S.W.3d at 697. During the trial, the witness stated that, based upon her experience, $22,500 was a fair price for the collateral. However, in her affidavit the witness had attested that the collateral was worth the value of the debt, approximately $40,000. The debtor, on the other hand, testified that, based upon his experience in the restaurant business, the collateral was worth $45,000 to $50,000.

In discussing the commercial reasonableness of the disposition of the collateral, the *Dixon* court noted, "It is well settled under Arkansas law that price alone is not dispositive of whether a

sale is commercially reasonable." *Id.* at 150, 15 S.W.3d at 698. To establish commercial unreasonableness, decidedly stronger proof is needed than an inadequate sale price. *Id.* However, a large discrepancy between the sale price and fair market value of the collateral signals the need for close scrutiny of the sale procedures. *Id.* In affirming the trial court's decision, the *Dixon* court concluded that the trial court had not based its decision merely on sales price, but acknowledged that it was required to consider time, method, and place of the sale as well as the price. *Id.*

The value of the collateral was also an issue in *Beard, supra,* where we held that the trial court's decision that the sale was commercially reasonable was not clearly against the preponderance of the evidence. *Id.* The *Beard* court noted that, while the sale of the car at issue may not have brought as high a price as the appellant would have hoped, there was testimony that the car had unusually high mileage for a one-year-old car. *Id.* The creditor's witness also testified that the car was sold at a "dealers-only auction" because in his experience he believed that such a sale would bring the highest possible price for the car. *Id.* Additionally, the car was sold promptly after it was repossessed. *Id.*

Similarly, in *Cheshire v. Walt Bennett Ford, Inc.,* 31 Ark. App. 90, 788 S.W.2d 490 (1990), a case challenging the commercial reasonableness of the sale of a truck, the creditor's general manager testified about the truck's repossession and resale. He testified that the truck had "excessive mileage" and was in "poor condition." *Id.* at 96, 788 S.W.2d at 493. Specifically, he testified that the truck had to be reconditioned by having dents fixed, the paint touched-up, the seats and upholstery repaired, a bed liner installed, and the battery and a tire replaced. *Id.* The truck was immediately placed on the appellee's used-car lot for retail sale; however, the truck had a diesel engine, which made it more difficult to resell than a gasoline engine. *Id.* The witness testified that the truck remained unsold for so long that it depreciated to a point where it had to be offered for wholesale. *Id.* Four bids were received, ranging from $1000 to $1500, and the appellee bid $1600. In the witness's opinion, the appellee's $1600 bid was fair and reasonable. The appellate court held that the trial court's ruling that the collateral was disposed of at a private, commercially reasonable sale was not clearly against the preponderance of the evidence.

We find that the trial court's decision in this case is clearly against the preponderance of the evidence because the appellee, although the issue was contested at trial, presented no

evidence to support a finding that the sale conducted was commercially reasonable. While our case precedent has mainly addressed the discrepancy between the value of the collateral and the subsequent sale price, this issue is not dispositive and is not the only issue that a trial court can consider when analyzing the commercial reasonableness of a sale. *Dixon, supra.* What is clear from our case law is that the trial court is required to consider evidence regarding the reasonableness of the method, time, manner, and place of the disposition of the collateral. *Id.* For example, this court has discussed a trial court's consideration of the (1) promptness of the sale, *see Cooper, supra*; (2) testimony regarding the discrepancy between the value of the collateral and the sales price, *see Dixon, supra*; (3) the condition of the property, *see Dixon, supra*; *Cheshire, supra*; *Beard, supra*; (4) the method of notification of the sale, *see Cheshire, supra*; and (5) the type of sale or disposition, *see Beard, supra*; *Cheshire, supra.* In the case at bar, no such evidence was presented. The only testimony that Mazda offered was Tucker's testimony that the remaining balance on the contract was $11,809.76; that the exhibits indicated that the vehicle was sold at a "private" sale for $6100; and that the remaining balance due after the sale was $5709.76. Tucker admitted that he had no personal knowledge of the activities surrounding the sale or disposition of the property. He did state that the documents reflected that the sale was by "auction" but that he had no other knowledge of the sale. Mazda submitted no evidence of the value of the vehicle, the condition of the vehicle, or the manner of the sale, other than the bare statement contained in a computer printout that the disposition had occurred at an "auction." Mazda did not submit evidence of how the sale was advertised or to whom it was advertised. Because Mazda had the burden of proving that the sale was commercially reasonable, *Dixon, supra*, and because we find that it did not meet that burden, the trial court's decision is clearly against the preponderance of the evidence, and we reverse. Consequently, Mazda is not entitled to the deficiency judgment. *AM Credit Corp. v. Riley*, 35 Ark. App. 168, 815 S.W.2d 392 (1991).

Because we are reversing this case on Greenlee's first point on appeal, we find it unnecessary to address her remaining points.

Reversed.

BIRD and BAKER, JJ., agree.